IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| MARIAH MURRAY and AMBER EVANS, each individually and on behalf of all others similarly situated | | PLAINTIFFS |
| v. | Case No. 5:15-CV-5177 | |
| SILVER DOLLAR CABARET, INC.; PLATINUM CABARET, LLC; ANTHONY F. CATROPPA; and ANTHONY K. CATROPPA, each individually and as officers and/or directors of Silver Dollar Cabaret, Inc. and/or Platinum Cabaret, LLC | | DEFENDANTS |

**OPINION AND ORDER**

Before the Court is Plaintiffs Mariah Murray and Amber Evans's second motion for conditional certification of a collective action, disclosure of contact information for potential opt-in plaintiffs, and to send court-approved notice (Doc. 40); Defendants' response (Doc. 44); Plaintiffs' reply (Doc. 46-1); and the parties' supporting documents. Plaintiffs have also filed a second motion for Rule 23 class certification (Doc. 47), to which Defendants responded (Doc. 52), and Plaintiffs replied (Doc. 53-1). The Court will address each motion in turn.

**I.　Background**

Plaintiffs are former exotic dancers at Silver Dollar Cabaret, Inc. and Platinum Cabaret, LLC, both located in Fayetteville, Arkansas. They claim while they were dancers at the two adult entertainment clubs, Defendants violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. (the "FLSA") and the Arkansas Minimum Wage Act, A.C.A. §§ 11-4-201 et seq. (the "AMWA"). Specifically, Plaintiffs allege that they and others performed on Defendants' premises during a period which extends three years prior to the filing of the complaint, and that they were not paid a minimum wage or overtime compensation for hours worked in excess of 40 in a given week. They

1

claim that at all relevant times, Defendants knew or should have known that the FLSA and AMWA applied to the dancers.

Plaintiffs seek conditional certification of their FLSA claims as a collective action pursuant to 29 U.S.C. § 216(b), along with an authorization to issue notice to putative class members, and approval of the proposed notice (Doc. 40-3), proposed consent to join form (Doc. 40-4), and proposed follow-up postcard (Doc. 40-5). In addition, Plaintiffs seek Rule 23 class certification for their AMWA claims, which involve practically identical allegations. Defendants oppose the motions and raise a number of objections to each of Plaintiffs' requests and proposals.

## II.     Discussion

### A.     Motion for Conditional Certification of a Collective Action

#### 1.     Conditional Certification

"The FLSA allows named plaintiffs to sue [their employer] 'for and in behalf of… themselves and other employees similarly situated.'" *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 796 (8th Cir. 2014) (quoting 29 U.S.C. § 216(b)). This type of suit—a collective action—is distinguishable from a class action pursuant to Federal Rule of Civil Procedure 23, as it requires that plaintiffs use the opt-in mechanism under 29 U.S.C. § 216(b) for joining a putative class of plaintiffs rather than the opt-out procedures in Rule 23. *Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir. 1975). The FLSA gives the Court "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "The court has a responsibility to avoid the stirring up of litigation through unwarranted solicitation of potential opt-in plaintiffs, but the district court should, in appropriate cases, exercise its discretion to

facilitate notice to potential plaintiffs." *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890 (N.D. Iowa 2008) (citing *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991); *Hoffman-La Roche*, 493 U.S. at 169) (internal quotations omitted).

Ultimately, certification of a collective action will depend on whether the named plaintiffs are similarly situated to the putative class. Neither § 216(b) nor the Eighth Circuit Court of Appeals has defined when "other employees [are] similarly situated" so that collective action certification and authorization of notice is appropriate. *Davenport v. Charter Comms., LLC*, 2015 WL 164001, at *4 (E.D. Mo. Jan. 13, 2015). However, most district courts within the Eighth Circuit have utilized a two-stage approach for collective action certification under § 216(b). *See e.g.*, *Resendiz-Ramirez v. P & H Forestry, L.L.C.*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007) ("The Court is convinced that the more prudent approach is to use the two-stage certification analysis that is used by a majority of courts, including a majority of district courts in the Eighth Circuit."). Nonetheless, the Court finds it appropriate to emphasize that nothing in Eighth Circuit or United States Supreme Court precedent requires district courts to utilize this approach; rather, "[t]he decision to create an opt-in class under § 216(b), like the decision on class certification under Rule 23, remains soundly within the discretion of the district court." *Bouaphakeo*, 564 F. Supp. 2d at 891 (citing *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001)).

The two-stage approach to certifying a collective action is divided into (1) the notice stage and (2) the opt-in or merits stage. *Resendiz-Ramirez*, 515 F. Supp. 2d at 941. First, when named plaintiffs move for certification of a collective action—typically early in the discovery process— a court considers whether the putative class should be given court-authorized notice of the opportunity to opt in to the action. *Id*. This requires an initial determination of whether Plaintiffs and putative class members are similarly situated, but because this inquiry is made at such an early

stage of the litigation, the Court applies a fairly lenient standard. *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 688 (W.D. Mo. 2007). Specifically, Plaintiffs bear the burden to make a modest factual showing that they and the putative class members were victims of a common decision, policy, or plan of the employer that affected all class members in a similar manner. *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 940–41 (W.D. Ark. 2007). While the burden of proof is relatively low, "some identifiable facts or legal nexus must bind the claims so that hearing the cases together promotes judicial efficiency." *Jost v. Commonwealth Land Title Ins. Co.*, 2009 WL 211943, at *2 (E.D. Mo. Jan. 27, 2009) (quotations omitted). Some factors that may be considered by district courts making this determination include: (1) whether everyone worked in the same location; (2) whether they held the same job title; (3) whether the alleged violations occurred during the same time period; (4) whether all workers were subjected to the same policies and practices, and whether those policies and practices were established in the same manner by the same decision maker; and (5) the extent to which the acts constituting the alleged violations are similar. *See Watson v. Surf-Frac Wellhead Equip. Co.*, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012). If notification is deemed appropriate, the class is conditionally certified for notice purposes and the action proceeds as a representative action throughout discovery. *Croft v. Protomotive, Inc.*, 2013 WL 1976115, at *1 (W.D. Ark. May 13, 2013) (citing *Resendiz-Ramirez*, 515 F. Supp. 2d at 940). "Second, when discovery is largely complete, the defendant may move for decertification, and the court will consider other factors to determine whether the conditionally certified class should be permitted to proceed as a collective action." *Id*.

      Plaintiffs request that the Court conditionally certify and approve notice for all potential class members for a class defined as all exotic dancers who worked for Defendants at the two clubs

in question within a three year period.[1] Considering the relevant standards and applicable factors listed above, the Court finds under the fairly lenient standard applicable to this notice stage of certification that Plaintiffs have met their burden to demonstrate that that they are similarly situated with putative members to the extent necessary to justify court-authorized notice to the proposed class. Throughout the pleadings and sworn affidavits, Plaintiffs have established that they and all other potential plaintiffs were exotic dancers at the two adult entertainment clubs in question at all relevant times, and they were all subject to the same alleged FLSA violation by not being paid a minimum wage or compensated for overtime. Plaintiffs set forth substantial allegations that management exerted a significant amount of control over the dancers via the same policies and procedures, and that this led to the alleged FLSA violations.

The defense raises minimal arguments against certification at this stage, simply arguing that two out of the 16 individuals who have consented to being potential opt-in plaintiffs were hourly employees of Defendants. Class members need not be identically situated to be considered similarly situated. *Kautsch*, 504 F. Supp. 2d at 690. Moreover, the "disparate factual and employment settings of the individual plaintiffs" is a consideration usually reserved for second stage analysis. *Smith v. Heartland Auto. Servs., Inc.*, 494 F. Supp. 2d 1144, 1150 (D. Minn. 2005); *Kautsch v. Premier Comms.*, 2008 WL 294271, at *2 (W.D. Mo. Jan. 31, 2008); *Bouaphakeo*, 564 F. Supp. 2d at 892. The Court does not make findings of fact or credibility determinations with respect to contradictory evidence submitted by the parties at this stage. *Loomis v. CUSA, LLC*, 257 F.R.D. 674, 676 (D. Minn. 2009). At this stage of the litigation, the Court determines that Plaintiffs have met their burden of establishing that they are similarly situated to other dancers at

---

[1] The Court addresses the proper temporal length of the class definition in Section II.A.2 of this order.

the two adult entertainment clubs during all relevant times, and that they have made substantial factual allegations to support their claim of FLSA violations for minimum wage and overtime compensation. Accordingly, the Court will conditionally certify this action for the purpose of giving notice to putative plaintiffs, subject to a refining of the class definition.

### 2. Temporal Scope of the Class Definition and Equitable Tolling

Plaintiffs request that the Court conditionally certify and approve notice to all potential class members for a class defined as:

> All Exotic Dancers who worked for Defendants Silver Dollar Cabaret, Inc., Platinum Cabaret, LLC, Anthony F. Catroppa, and Anthony K. Catroppa (collectively "Defendants") in the State of Arkansas at any time after July 30, 2012.

(Doc. 40). Defendants raise two specific objections to this class definition. Defendants first oppose the class definition including the names of individual defendants Anthony F. Catroppa and Anthony K. Catroppa. However, because both individuals are named as defendants in the lawsuit, the Court finds that their inclusion in the class definition along with the other named defendants is appropriate.

More appropriately, Defendants object to the temporal scope of the class definition. As it stands, the class period extends three years prior to the filing of the complaint in this action on July 30, 2015, but Defendants argue that the correct class period is three years prior to the Court's entering of an order conditionally certifying the collective action up through the close of the opt-in period. This objection invariably invokes whether the Court should equitably toll the limitations period.

A cause of action under the FLSA "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may

be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).  Because Plaintiffs allege willful violations of the FLSA, a three-year limitations period applies.  Typically, the statute of limitations for each plaintiff in an FLSA collective action runs when he or she files written consent with the court effectively joining the lawsuit rather than when the named plaintiff files the complaint.  29 U.S.C. § 256(b).  However, "[e]quitable tolling generally may be applied to 'avoid inequitable circumstances' and may be applied "as a matter of fairness where a party has been prevented in some extraordinary way from exercising his rights."  *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 200 (S.D. N.Y. 2006).

Even though their class definition imposes a class period of three years from the filing of the complaint and Defendants have objected to this, Plaintiffs contend that the Court should "leave the issue of equitable tolling to be decided at a future date."  (Doc. 40, ¶ 7).  Plaintiffs further argue that "[i]t would be wrong of the Court to foreclose the possibility of granting the tolling request at this time, since the issues have not been briefed."  (Doc. 46-1, p. 3).  The Court disagrees.  When Defendants objected to the temporal scope of the class period and contended that equitable tolling should not apply, that was the proper occasion for Plaintiffs to brief the Court with their arguments as to why the Court should toll the limitations period.  Moreover, Plaintiffs have had almost a year to supplement their motion, yet they have not done so.

"Plaintiffs bear the burden of demonstrating why they are entitled to equitable tolling, and the resolution of the issue is fact-specific."  *Cruthis v. Vision's*, 2013 WL 4028523, at *5 (E.D. Ark. Aug. 7, 2013).  Because Plaintiffs have not met their burden, the Court will not equitably toll the limitations period to three years prior to the filing of the complaint.² However, the Court notes

---

² The Court is aware of the practice by which notice is permitted for the three-year period preceding the filing of the complaint, but challenges to the timeliness of an individual plaintiff's filings are addressed at a subsequent date.  *See, e.g., Winfield v. Citibank, N.A.,* 843 F.Supp.2d

that "[t]he delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in an FLSA case, may be deemed an extraordinary circumstance justifying application of the equitable tolling doctrine." *Yahraes v. Rest Assocs. Events Corp.*, 2011 WL 844963, at *2 (E.D. N.Y. Mar. 8, 2011) (citations and internal quotations omitted).

Plaintiffs "whose putative class representatives and their counsel are diligently and timely pursuing the claims should… not be penalized due to the courts' heavy dockets and understandable delays in rulings." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D. N.Y. 2012); *see also Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 276 (S.D. Iowa 2011) (citing *Lee v. ABC Carpet & Home,* 236 F.R.D. 193, 200 (S.D.N.Y.2006)).  Therefore, the Court finds it appropriate to toll the statute of limitations from February 15, 2016—the date the second motion for conditional certification was filed—until the date this order is filed.  The class period for putative members will thus extend back to a starting point of February 15, 2013.  The class definition and any references to it in Plaintiffs' proposed forms should be updated to reflect this change.

### 3. Form of Notice

Plaintiffs have submitted a proposed notice, a proposed notice of consent to join form, and a proposed follow-up postcard (to be sent to non-responding class members 30 days after the initial notice is sent).  Defendants object to certain aspects of these documents and propose certain changes.  The Court will address each objection and proposal in turn.

A collective action depends "on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann–La Roche,* 493 U.S. at 170.  The Court will manage the

---

397, 410 (S.D.N.Y.2012).  That practice will not be adopted by this Court in the present action for the reasons set forth.

preparation and distribution of notice so that it is "timely, accurate, and informative." *Id.* at 172. A district court "has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012).

First, with regard to the proposed notice, the Court finds that the case caption should remain as proposed because it is both accurate and informative. As for the description of the lawsuit in the proposed notice, Defendants argue that it should be reworded because the description is misleading and omits any reference to Defendants' claims or defenses. Plaintiffs argue that the purpose of the notice should be to inform putative members of their right to opt in and not to explain sides. Putative members should know what they are opting in to. Defendants' proposed revision is accurate and more completely informs putative members of the lawsuit in a concise manner. As such, Defendants' objection is granted and their proposed revision to the description of the lawsuit is accepted, except that references to any individual Defendants should be removed and necessary grammatical corrections should be inserted.

The Court denies Defendants' objections to Sections 3, 4, and 9 of the proposed notice, subject to the modified class period, because those sections are both accurate and fair. Section 6 should be revised to remove "subject to any defenses that might be asserted by Defendants" from the second sentence. Additionally, the Court agrees with Defendants that Section 5 should be updated to reflect the conditional nature of certification at this point. Similarly, Defendants correctly point out that "the second paragraph essentially seeks to obtain a waiver or assignment of opt-ins' decision-making rights to Plaintiffs" and that "Plaintiffs' counsel cannot bind opt-in plaintiffs to an agreement concerning their responsibility for counsels' fees and costs without discussing that issue with each opt-in plaintiff and obtaining her assent to such an agreement." The Court orders that Section 5 of the proposed notice be changed to read as follows:

> EFFECT OF JOINING THIS SUIT: If you choose to join this suit and the Court enters a judgment in the case while you are a part of it, you will be bound by the judgment, whether it is favorable or unfavorable. You also will be bound by, and will share in, any settlement that may be reached on behalf of the class if you are still a participant in the lawsuit when the settlement is entered. While the suit is proceeding, you may be required to provide information, sit for depositions, and testify in court.
>
> The Court has not yet reached a final decision about whether you are entitled to recover. If Plaintiffs' attorneys get money or benefits for the class, they may ask the Court for fees and expenses. You won't have to pay these fees and expenses out of pocket. If the Court grants Plaintiff counsel's request, the fees and expenses would be either deducted from any money obtained as part of the Court's final decision or paid separately by Defendants.

Next, Defendants argue that the use of a "reminder" postcard would be redundant and could be interpreted as providing judicial encouragement for individuals to join the lawsuit. There is no clear precedent in the Eighth Circuit on the propriety of reminder or follow-up notices as Plaintiffs requests. Furthermore, district courts in various circuits are split on the issue. *Knispel v. Chrysler Grp. LLC*, 2012 WL 553722, at *8 (E.D. Mich. Feb. 21, 2012) (denying request for reminder notice on the basis that it "could potentially be interpreted as encouragement by the Court to join the lawsuit."); *Gee v. Suntrust Mortg., Inc.*, 2011 WL 722111, at *4 (N.D. Cal. Feb. 18, 2011) (approving reminder notice to be sent 45 days after initial notice). However, some district courts in the Eighth Circuit have granted plaintiffs' requests for reminder notice conditioned on the inclusion of disclaimer language. *See Jennings v. Cellco P'ship*, 2012 WL 2568146, at *6 (D. Minn. July 2, 2012) ("Plaintiffs' counsel may also send one reminder letter during this 90–day notice period with the following language added to the proposed letter provided by Plaintiff: 'This Notice Serves to Notify You of This Pending Lawsuit. The Court Does Not Encourage or Discourage Participation In This Case.'"); *Holliday v. J S Exp. Inc.*, 2013 WL 2395333, at *9 (E.D. Mo. May 30, 2013) (approving a reminder notice provided that it contain "a disclaimer that the Court does not encourage or discourage participation in the case."). The Court finds that the

10

request to use a reminder postcard notice should be granted subject to a disclaimer that the Court neither encourages nor discourages participation, and that the title of the postcard be changed from "Second Notice of Right to Join Lawsuit" to "Reminder of Right to Join Lawsuit." The disclaimer will ensure the putative class members are informed of the Court's neutrality on the matter and rephrasing the title of the postcard will only improve its accuracy.

Finally, the consent to join form improperly infers in several instances that the Court has already found putative members to be employees of Defendants. Plaintiffs acknowledge this, and their proposed changes are sufficient to more accurately reflect the nature of the lawsuit.

### 4. Dissemination of Notice and Requests for Information

Plaintiffs have made a number of requests for contact information and simultaneous requests for the means of disseminating notice. Defendants have objected to many of these requests, so the Court will again address each of the requests and objections in turn.

Plaintiffs request a 90-day opt-in period for the dissemination of notice, but the defendants argue that a 60-day opt-in period is sufficient. Plaintiffs seek a 90-day opt-in period because of the lack of available contact information. The Court finds that a 90-day opt-in period is sufficient and will better serve the interests of efficiently facilitating notice without further delaying this litigation because of the transient nature of exotic dancers and the lack of available contact information. Accordingly, Plaintiffs' request for a 90-day opt-in period will be authorized.

With regard to contact information, Plaintiffs request phone numbers, copies of driver's licenses, and personal information sheets for putative plaintiffs. District courts within the Eighth Circuit regularly order defendants to provide phone numbers for putative plaintiffs. *See, e.g., Davis v. NovaStar Mortg., Inc.*, 408 F. Supp. 2d 811, 819 (W.D. Mo. 2005); *Fast v. Applebee's Intern., Inc.*, 243 F.R.D. 360, 364–65 (W.D. Mo. 2007); *Resendiz-Ramirez*, 515 F. Supp. 2d at

943. The Court finds that Defendants must produce phone numbers for all putative plaintiffs. However, in the interest of privacy and in light of the ample information the Court is already ordering be produced, the Court finds it unnecessary for Defendants to produce copies of driver's licenses as long as the addresses from those licenses are provided as Defendants represent. Accordingly, Plaintiffs' request for that information and personal information sheets will be denied.

Likely due to the perceived difficulties in ascertaining potential plaintiffs of this action and in order to mitigate the failures of the notice methods previously mentioned, Plaintiffs have made additional requests regarding the dissemination of notice. First, Plaintiffs seek the Court's leave to create and publish a Court-approved website where putative class members can access the notice, consent to join, and most recent versions of the complaint and answer, as well as permission to place an advertisement for the lawsuit on Facebook that would link to the website. Plaintiffs also request that Defendants be required to post the notice in a conspicuous location at its facilities where putative class members would be most likely to see it, to maintain an adequate number of copies of the consent to join at all times, and to distribute a copy of the notice and consent to join to any dancer or former dancer who requests one. Further, Plaintiffs seek permission to publish the notice in a newspaper of general circulation in Arkansas, and in a newspaper of general circulation in Fayetteville, Arkansas. Finally, Plaintiffs generally request that they be allowed to pursue other means of locating opt-in plaintiffs, such as via email, telephone, and social media.

Plaintiffs' request that Defendants be required to post the notice in a conspicuous location at its facilities will be granted. *Cruthis v. Vision's*, 2013 WL 4028523, at *8 (E.D. Ark. Aug. 7, 2013) (citing *Putnam*, 276 F.R.D. at 277–78 ("[C]ourts routinely approve requests to post notice in common areas or on employee bulletin boards, even if there is an alternative form of notice.")).

While Defendants raise concerns of potential for confusion and distortion in the notice process if communication is allowed via email, courts within the Eighth Circuit regularly require defendants to provide last known email addresses for putative class members. *See e.g.*, *Davenport v. Charter Comms. LLC*, 2014 WL 2993739, *9 (E.D. Mo. July 3, 2014); *Melgar v. O.K. Foods, Inc.*, 2015 WL 1470092, *2 (W.D. Ark. Mar. 31, 2015). Accordingly, Defendants are ordered to disclose any putative class members' emails they possess, and Plaintiffs may contact the potential members to send the final notice and consent forms via email. If service by mail is returned as undeliverable, Plaintiffs may also attempt to locate and contact putative class members by telephone. Because the Court finds that the methods outlined above are sufficient to effectuate notice, all of Plaintiffs' other requests to utilize alternative means to disseminate notice are denied.

      **B.**      **Motion for Rule 23 Class Certification**

Plaintiffs have also filed a motion for class action certification of their state-law AMWA claim. (Doc. 47). The procedure for certifying a class action lawsuit is found in Federal Rule of Civil Procedure 23. On a motion for class certification, the movant has the burden to affirmatively demonstrate that the requirements of Rule 23 are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Court must conduct a rigorous analysis to determine whether compliance with Rule 23 has been demonstrated. *Comcast Corp. v. Behrend*, --U.S--, 133 S.Ct. 1426, 1432 (2013). In conducting this analysis the Court may "probe behind the pleadings," and the analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351 (internal quotations omitted).

Before a class can be certified under Rule 23, the movant must demonstrate that the class representatives are members of the class and that:

> (1)      the class is so numerous that joinder of all members is impracticable;

>   (2)   there are questions of law or fact common to the class;
>   (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>   (4)   the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). The prerequisites in these four subsections are commonly referred to as the requirements of "numerosity, commonality, typicality, and adequate representation." *Dukes*, 564 U.S. at 349. A class that meets these four requirements may proceed with its action if it also qualifies as one of the types of actions that may be maintained under Rule 23(b). The burden is on the party seeking certification to demonstrate with evidentiary proof that Rule 23(b) is satisfied. *Comcast Corp.*, 133 S.Ct. at 1432.

Plaintiffs here seek certification under Rule 23(b)(3). An action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule provides a nonexclusive list of matters pertinent to these findings:

>   (A)   the class members' interest in individually controlling the prosecution or defense of separate actions;
>   (B)   the extent and nature of any litigation concerning the controversy already begun by or against class members;
>   (C)   the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>   (D)   the likely difficulties in managing a class action.

*Id*.

Plaintiffs have not met their Rule 23(b)(3) burdens.[3] The "belt-and-suspenders method" of having both collective certification of an FLSA claim and class certification of an AMWA claim

---

[3] Because the Court determines that Plaintiffs have not satisfied Rule 23(b)(3), it need not make a finding of whether the prerequisites of Rule 23(a) were met.

is not appropriate here due to the nature of the lawsuit. *See Johnson v. Arkansas Convalescent Ctrs., Inc.*, 2013 WL 3874774, at *2 (E.D. Ark. July 25, 2013). One stark difference between the two actions is that the FLSA provides for participation on an opt-in basis, *see* 29 U.S.C. § 216(b), while Rule 23 requires that nonparticipating class members affirmatively opt-out of the suit. *See* FRCP 23(c)(1)(B)). In an action such as this, potential plaintiffs deserve the ability to "control their participation in this litigation in a far more expeditious fashion" than that provided for under Rule 23. *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 469–70 (N.D. Cal. 2004). Plaintiffs point to the "often transient nature of the exotic dancer population and the lack of record keeping common to defendants in this profession" (Doc. 41, p. 21) when it supports their requests for the proposed notice and dissemination of notice with regard to the conditionally certified collective action. That same transient nature and lack of quality recordkeeping hinders Plaintiffs' argument that a Rule 23 class is a superior method of adjudication. Of the potential plaintiffs in this action, on average one might dance as little as five minutes or at most one week before quitting at the two adult entertainment clubs in question. (Doc. 52-1, p. 86).

Further, there would be inherent difficulties in managing a class action in this case. If both the collective and class actions were certified, notice and settlement issues could arise for individual members. The transient nature of the class raises concern that notice will not be effective enough to justify Rule 23 class treatment. Assuming, arguendo, that both actions were certified and potential members received notice of them, the different notices of rights under the two actions would likely be confusing for recipients. On the one hand, the individual would receive notice of a right to opt-in while simultaneously getting notice to opt-out, along with notice of the partial overlap and differences between the rights of a member of an FLSA collective action and a state-law minimum wage class. This would likely be confusing for individuals who on

average worked at one of the clubs between five minutes and one week.  Later in the lawsuit, this same line of reasoning runs the risk of creating inconsistent relief for Plaintiffs.  Such a process would be neither fair nor efficient.

The Court is not ruling that FLSA collective actions and state-law minimum wage class actions are "inherently incompatible,"[4] but simply determines that based on the claims, record, and arguments presented in this case, the Court's own experiences with dual collective and class action cases, and the unlikelihood that notice will reach a substantial number of putative class members, that the conditionally certified collective action is a far superior method for fairly and efficiently adjudicating this particular controversy.  As a result, the Court holds that a Rule 23 class on the state statutory version of the minimum wage and overtime claim is not a superior means of adjudicating this action, and thereby will deny Plaintiffs' motion.  The realities of the putative class are such that an opt-in method by which individuals would have control over their participation in this litigation is far superior to the opt-out method presented in a Rule 23 class.

## III. Conclusion

IT IS THEREFORE ORDERED that Plaintiffs' second motion for conditional certification of a collective action, disclosure of contact information for potential opt-in plaintiffs, and to send court-approved notice (Doc. 40) is GRANTED IN PART and DENIED IN PART.  The motion is GRANTED as follows

- The Court conditionally certifies the case as a collective action pursuant to 29 U.S.C. § 216(b) and authorizes notice to be sent to potential opt-in plaintiffs.  The opt-in class will

---

[4] The Court is aware that the majority of courts in the Eighth Circuit have found an FLSA collective action and a Rule 23 class action to not be inherently incompatable. *See Garner v. Butterball, LLC*, 2012 WL 570000, at *6 (E.D. Ark. Feb. 22, 2012) (collecting cases).  The Court does not reach that ultimate issue in its ruling today, but does note that it is not convinced by the reasoning put forth in any of those decisions.

consist of all exotic dancers who worked for Defendants Silver Dollar Cabaret, Inc., Platinum Cabaret, LLC, Anthony F. Catroppa, and Anthony K. Catroppa (collectively "Defendants") in the State of Arkansas at any time since February 15, 2013. Upon receiving the information described below, Plaintiffs will have 90 days by which to distribute notice and file opt-in plaintiffs' signed consent to join forms with the Court. **The 90-day opt-in period will begin on March 1, 2017.**

- The Court will toll the statute of limitations for opt-in plaintiffs from February 15, 2013 to February 8, 2017.

- Defendants are directed to provide the names, mailing addresses, email addresses and phone numbers for all individuals who worked for Defendants as exotic dancers at any time since February 15, 2013. The use of phone numbers to contact putative class members is conditioned on notice by mail being returned as undeliverable. Defendants may provide this information ordered disclosed in any reasonable format. **Defendants have until February 22, 2017 to deliver the contact information to Plaintiffs.**

- Plaintiffs' proposed notice, consent to join, and follow-up postcard are approved subject to the following changes:

    o Defendants' proposed revision to the description of the lawsuit in the proposed notice is accepted, except that references to any individual Defendants should be removed, and necessary grammatical corrections should be inserted.
    o Section 5 of the proposed notice should be changed to reflect the Court's blocked passage on page 10 of this order.
    o Section 6 of the proposed notice should be revised to remove "subject to any defenses that might be asserted by Defendants" from the second sentence.
    o The follow-up postcard should be titled "Reminder of Right to Join Lawsuit" and should include a disclaimer stating, "The Court does not encourage or discourage participation in this case."
    o The consent to join form should be revised to reflect Plaintiffs' proposed changes. Plaintiffs are directed to also update the form to reflect the proper class period.

- Defendants are directed to post the notice in a conspicuous location at their facilities where

putative class members would be most likely to see it, to maintain an adequate number of copies of the consent to join at all times, and to distribute a copy of the notice and consent to join to any dancer or former dancer who requests one.

In all other respects, the second motion for conditional certification of a collective action is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' second motion for Rule 23 class certification (Doc. 47) is DENIED.

IT IS SO ORDERED this 8th day of February, 2017.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE